**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WAYNE WATSON ENTERPRISES,** | : | |
| **LLC,** *et al.***,** | : | |
| | : | **Case No. 2:15-cv-2679** |
| **Plaintiffs** | : | |
| **Counter-Defendants,** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **v.** | : | **Magistrate Judge Jolson** |
| | : | |
| **CITY OF CAMBRIDGE,** *et al.***,** | : | |
| | : | |
| **Defendants** | : | |
| **Counter-Claimants.** | : | |

## OPINION & ORDER

This matter comes before the Court on cross-motions for summary judgment from Wayne Watson Enterprises, LLC, *et al.* ("Wayne Watson") and the City of Cambridge, *et al.* ("the City"). As explained below, the Court **GRANTS** the City's motion for summary judgment (Doc. 26) on every claim but a supplemental state-law claim; **DISMISSES** the state-law claim for lack of jurisdiction; and **DENIES** Wayne Watson's motion (Doc. 25) in its entirety.

## I. BACKGROUND

Property rights stand at the heart of this dispute; more specifically—how to weigh the competing interests of private property owners purportedly to use and enjoy their land on one hand versus a municipality's need to manage public roads and traffic patterns on the other.

### A. Factual Background

Wayne Watson owns two parcels of land within the City on which it operates a car wash. Twin access roads connect the car wash to State Route 209—the only road that borders the property. At the head of one of those access roads sits a traffic signal, which permits customers to exit the property safely onto Route 209 while making protected left-hand turns.

1

Next door sits a Wendy's restaurant, which also connects to Route 209, albeit *without* a turn signal to protect motorists turning left out of the parking lot.  A concrete retaining wall and gravel berm separate the Wendy's parking lot from Wayne Watson's car wash.

In the fall of 2014, Wendy's management contacted the City and indicated that they wished to remodel the existing restaurant.  In connection with this remodeling, Wendy's management suggested creating a "shared drive" between the restaurant parking lot and the car wash next door; that way, restaurant patrons exiting the parking lot could use the traffic signal from one of the car wash's access roads to Route 209.  Drivers would not, then, have to make an unprotected left-hand turn while exiting Wendy's.  This proposed drive was to be located entirely within an 82 foot public right-of-way that extends from the centerline of Route 209 outward toward the property lines for the Wendy's and the car wash.  The City owns that public right-of-way in fee simple, just as it has since 1966.  Wendy's agreed to pay all costs associated with the shared drive, which was to be little more than a twelve-foot long piece of concrete that would connect the two adjacent parking lots.

The City Engineer, Paul Sherry (a named defendant in this case), reviewed Wendy's proposal and agreed that it would be safest for patrons exiting the restaurant to have access to the traffic signal.  Accordingly, Mr. Sherry presented the idea to City Council.  On October 6, 2014, the City Council's Civil Services Committee met and discussed the proposal.  Mr. Sherry disclosed that Wendy's requested "to put in a frontage road, which basically connects the [Wendy's and car wash] parking lots so that [Wendy's traffic] can access the traffic signal." (Am. Compl., Doc. 16, PageID 288).  Mr. Sherry also volunteered that he felt the proposed drive would provide "better, safer access."  (*Id.*).  Mr. Sherry did not, however, request or provide any traffic or safety studies in connection with the proposal.

2

There was some discussion at the Civil Services Committee meeting over whether anyone from the City had reached out to Wayne Watson about the proposal. Councilor Bennett asked Mr. Sherry "is there any discussion going on with Wayne Watson?" (*Id.*). The Committee minutes indicate that Mr. Sherry felt "there will be some push back from Mr. Watson" (*id.*), but Mr. Sherry later conceded in this litigation that no one had reached out to Mr. Watson about the proposal just yet. The Civil Services Committee ultimately approved a motion "that an access road be constructed at no cost to the City by private contractor, to be inspected and overseen by the City Engineer['s] Office." (*Id.*).

City Council then met on October 29, 2014, and passed Ordinance No. 50-14, which allowed for a private contractor to construct an "access road" between the Wendy's and the car wash, with construction to be overseen by the City Engineer's Office. (*Id.* at PageID 298). City Council did not provide notice directly to Wayne Watson before its October 29 meeting. Instead, City Council's public agenda, which was distributed to local media outlets, listed an ordinance concerning construction of the proposed access road among twelve other ordinances under consideration that evening. (*Id.* at PageID 290-92).

The City ultimately notified the adjacent property owners, including Wayne Watson, about the proposal by way of a letter from Mr. Sherry dated February 9, 2015. The letter noted that City Council already approved the shared drive and that construction would be completed in conjunction with the Wendy's remodeling. The letter also admitted that the purpose of the drive was to provide a "northbound egress option from [Wendy's] via the signal at Woodlawn Avenue," while southbound (ingress) traffic would still have "the existing access points at each business." (*Id.* at PageID 299). Finally, the letter included a construction plan sheet for the proposed drive, which was prepared by Wendy's contractor.

On June 8, 2015, City Council met and passed Ordinance No. 38-15, which authorized the City Engineer to set guidelines for the newly approved "access roads."  (*Id.* at PageID 310). Wayne Watson (himself) attended the city council meeting and voiced his concerns regarding the shared drive, but to no avail.  Mr. Sherry, as City Engineer, subsequently prepared guidelines for potential future access roads.  Wendy's, for its part, submitted building permits and applications throughout the spring of 2015 to begin its remodeling.

Wayne Watson, however, remained opposed to construction of the shared drive, citing concerns over a potential increase in traffic that may adversely affect vehicles entering or exiting the car wash.  Watson hired crash-reconstruction experts and civil engineers to review the proposal and, after reading their findings, remained convinced that the proposal violated industry standards for road design and would lead to an uncontrolled scrum of traffic near the car wash. Watson seemed chiefly concerned that vehicles exiting the Wendy's parking lot through the new drive would block vehicles being pushed off an automatic conveyor belt at the car wash and that vehicles exiting the self-serve bays of the car wash might not see incoming traffic due to fog and condensation on their windshields.

### B.  Procedural Background

Due to these concerns, Watson filed suit in the Guernsey County Court of Common Pleas before Ordinance No. 38-15 (guidelines for access roads) could take effect.  Watson sued the City and Mr. Sherry but did not name the Wendy's or its owner as defendants.  Ultimately, Watson obtained both a temporary restraining order and a preliminary injunction in state court that halted implementation of the challenged ordinances and construction of the proposed shared drive.  The City timely filed its answer and counterclaim before removing the case to federal court on July 30, 2015.

4

In December 2015, Watson filed an amended complaint, which listed claims under 42 U.S.C. § 1983 for alleged procedural due process violations, substantive due process violations, void-for-vagueness infirmities in the challenged ordinances, the unlawful delegation of legislative power over municipal roads to the City Engineer, and alleged violations of state law and the City's municipal code regarding traffic construction.  Wayne Watson seeks a permanent injunction: (1) barring the City from enforcing Ordinance Nos. 50-14 and 38-15; and (2) prohibiting construction of the proposed shared drive.  Wayne Watson also seeks compensatory damages, punitive damages, and attorneys' fees and costs.  The City filed an amended answer and counterclaim, in which the City seeks a declaration that it may move forward with construction of the proposed shared drive.  Both parties have moved for summary judgment on all claims.  The matter is fully briefed and ripe for review.

## II.  STANDARD OF REVIEW

Both parties moved for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proof on both points.  *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001).  In determining whether this standard is met, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Crouch v. Honeywell Int'l, Inc.*, 720 F.3d 333, 338 (6th Cir. 2013).  As always, this inquiry turns on "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

When confronted with cross-motions for summary judgment, the Court must review each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party.  *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004).  The mere filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.  *Id.*

## III.  ANALYSIS

Wayne Watson challenges Ordinance Nos. 50-14 and 38-15, as well as the City's plan for a shared drive between the Wendy's and the car wash, on a host of grounds.  This Court will address each argument in turn.

### A.  The Court Has Jurisdiction Over All of Wayne Watson's Due-Process Claims.

At the outset, the Court must determine whether it has subject-matter jurisdiction over all of Wayne Watson's due-process claims.  The City argues that the Court lacks jurisdiction over any due-process claims because they are merely "disguised" takings claims that first must be adjudicated in state court.  As explained below, the City misrepresents Wayne Watson's claims, and this Court retains subject-matter jurisdiction over all the company's due-process claims.

The Sixth Circuit has held that regulatory takings claims are not ripe in federal court until the aggrieved landowner has "first pursue[d] available remedies in state court" to determine both how the property may or may not be used ("the finality requirement") and to determine whether the government has denied just compensation based on that injury ("the remedies requirement").  *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 569 (6th Cir. 2008) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Jefferson City*, 473 U.S. 172, 193, 195 (1985)); *see also Stanislaw v. Thetford Twp.*, 515 F. App'x 501, 505 (6th Cir. 2013) (agreeing that ordinary and regulatory takings claims are not ripe without state-court finality).

But the Sixth Circuit has also held that a "vital distinction" exists "between procedural due process claims and other varieties of constitutional grievances stemming from land use decisions." *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 893-94 (6th Cir. 1991). Under that "bright line" distinction, procedural due-process claims are "instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible [government] agency." *Id.* at 894. As this Court has explained, "[i]f the injury the [plaintiffs] seek to redress is harm to their property amounting to a 'deprivation' in constitutional terms, a final judgment is required, but if the injury is the infirmity of the process, neither a final judgment nor exhaustion is required." *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 456 F. Supp. 2d 904, 920 (S.D. Ohio 2006) (Marbley, J.) (quotation omitted).

Here, Wayne Watson's amended complaint challenges only the infirmity of the process by which the City approved the two ordinances and the proposed drive; the amended complaint does not allege a "taking" of property, regulatory or otherwise. Indeed, the word "taking" does not appear anywhere in the amended complaint. Rather, all of the allegations target the City's decision-making process in one way or another—be it due to the purported lack of notice and an opportunity to be heard, the arbitrary and capriciousness of the City's decision, the vagueness of the challenged ordinances, or City Council's decision to delegate much of the planning and supervision of public roads to the City Engineer. As in *Nasierowski Brothers*, "the allegedly infirm process is an injury in itself," and thus, the Court may immediately assert its jurisdiction. 949 F.2d at 894 (quotation omitted). Unlike in *Stanislaw*, where the plaintiffs' complaint was "quite nebulous as to what they really challenged," 515 F. App'x at 505, Wayne Watson's amended complaint invokes "pure due process claims," and thus, those claims are ripe for this Court's review, *see Wedgewood*, 456 F. Supp. 2d at 921-22.

**B.  The City Is Entitled to Summary Judgment on Wayne Watson's Procedural Due-Process Claims.**

The City is entitled to summary judgment on Wayne Watson's procedural due-process claims for two reasons: (1) Wayne Watson lacks a protected property interest in the public right-of-way in which the City seeks to place the shared drive or the flow of nearby traffic; and (2) the "random and unauthorized act" doctrine does not apply on these facts.

1.  Wayne Watson Lacks a Protected Property Interest Sufficient to Trigger Due Process.

Counts One and Three of the amended complaint allege a violation of Wayne Watson's procedural due-process rights.  (Doc. 16, ¶ 70(c) ("The City of Cambridge approved a measure that specifically impacts Plaintiffs' Property through a measure that was not a law of general application without providing Plaintiff[s] with any notice or an opportunity to be heard[.]"); *id.* at ¶ 76(e) ("[A]pproval of the Access Road . . . was a random and unauthorized act[.]")).

In resolving a procedural due-process claim, "the first issue" the Court must confront "is whether the [plaintiffs] were deprived of a [protected] property interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005).  Only after a plaintiff has demonstrated that he possessed a protected property interest will a court consider whether he was deprived of that interest and, if so, whether the government provided appropriate process before (or after) such deprivation occurred.  *Id.*  In other words, "a plaintiff must first show a protected property interest, and only after satisfying this first requirement can a plaintiff prevail by showing that 'such interest was abridged without appropriate process.'"  *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972)).  The United States Constitution does not create property rights; instead, those rights are created and defined by independent sources such as state law.  *Id.*  State court decisions provide "controlling authority for such determinations."  *Id.*

8

Here, the parties dispute whether Wayne Watson has a "protected property interest" under Ohio law and, thus, whether the City owed the company *any* procedural due process when enacting the challenged ordinances or approving the shared access drive.

### a. Wayne Watson's Argument

Wayne Watson argues that the right to "acquire, use, enjoy, and dispose of property" is "an *original* and *fundamental* right, existing anterior to the formation of the government itself." *See City of Norwood v. Horney*, 110 Ohio St. 3d 353, 361-62 (Ohio 2006) (quotation omitted) (eminent domain case).  At a high level of generality, the Supreme Court of Ohio shares this view and recognizes that "to be protected and secure in the possession of [one's] property is a right inalienable . . . which a written constitution may recognize or declare, but which existed independently of and before such recognition, and which no government can destroy." *Id.* at 362 (quotation and ellipses omitted).  Thus, "Ohio has always considered the right of property to be a fundamental right" and has recognized that the bundle of sticks associated with property "is strongly protected in the Ohio Constitution." *Id.* at 363.

Wayne Watson also argues that "the right to do business" is a right "equally sacred" to "free speech."  *See Eastwood Mall, Inc. v. Slanco*, 68 Ohio St. 3d 221, 223 (Ohio 1994) (free speech case involving a prohibition on picketing on private property).  Along those lines, Wayne Watson argues that a pair of pre-New Deal cases show that Ohio recognizes "[t]he right to carry on [a lawful] business is a property right constitutionally protected against unwarranted and arbitrary interference by legislative bodies."  *See, e.g.*, *City of Cincinnati v. Correll*, 141 Ohio St. 535, 540 (Ohio 1943) (invalidating a municipal ordinance that restricted the hours of operation of barber shops); *Olds v. Klotz*, 131 Ohio St. 447, 451 (Ohio 1936) (invalidating a municipal ordinance regulating grocers' hours).

*b.  The City's Argument*

The City counters that Wayne Watson lacks a protected property interest because, unlike the cases discussed above, the City is not trying to seize any property by eminent domain or regulate how Wayne Watson may use its own property.  Instead, the City simply wants to allow construction on property the City itself owns in fee simple.  The City argues that because the construction will not impact ingress or egress from Route 209 to the car wash, Wayne Watson lacks a protected property interest in the public right-of-way or the City's use of it.

The City cites a host of Ohio highway- and street-construction-cases in support.  Most of those decisions stem from the landmark case *State ex rel. Merritt v. Linzell*, 163 Ohio St. 97 (Ohio 1955).  In *Merritt*, the Supreme Court of Ohio addressed a business owner's property rights in connection with new road construction or repair and held as follows:

> An owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a private right or easement for the purposes of ingress and egress to and from his property . . . .

*Id.* at 97, paragraph one of syllabus.  In other words, "a property owner whose property abuts a street or highway has a right of ingress or egress, which cannot be taken away without compensation."  *Salvation Army v. Ohio Dep't of Transp.*, No. 04AP-1162, 2005-Ohio-2640, at ¶ 16 (10th Dist. Ct. App).  Nevertheless, "an abutting property owner's right of access is generally subordinate to the public's right to use or improve a public street."  *Id.*  The government, therefore, may regulate the flow of traffic on public roads even when the regulation affects a property owner's right of access, so long as there is no *denial* of ingress or egress.  *See Merritt*, 163 Ohio St. at 102-04; *see also Warren*, 411 F.3d at 709 ("Under Ohio law, the state may regulate a property owner's easement of access [to a public road] without compensation as long as there is no denial of ingress or egress.").

In discussing the specific contours of the right to ingress and egress from one's property, the Supreme Court of Ohio further determined:

> Mere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property, and, where a portion of a highway is relocated and property abutting the old highway does not abut on the relocated portion and the owner has the same means of ingress and egress to and from such property, there is no legal impairment of such right.

*Merritt*, 163 Ohio St. at 97, paragraph two of syllabus.  As such, it is "well-established that merely rendering access less convenient or more circuitous does not by itself constitute a 'substantial interference'" with ingress and egress triggering a property right.  *See Salvation Army*, 2005-Ohio-2640, at ¶ 17.  Indeed, Ohio courts have long held that "[a] claimant for damages in the alteration of a road is not entitled to recover where such alteration merely renders the road less convenient for travel, without directly impairing his access to the road from the improvements on his land."  *State ex rel. BDFM Co. v. Ohio Dep't of Transp.*, No. 11AP-1094, 2013-Ohio-107, at ¶ 21 (10th Dist. Ct. App.) (quotation omitted).

Finally, and with respect to disruptions in the flow of traffic accompanying road construction or repair, the Supreme Court of Ohio held as follows:

> The owner of land abutting on a highway has no property right in the continuation or maintenance of the flow of traffic past his property, and the diversion of traffic as the result of an improvement in the highway or the construction of an alternate highway is not an impairment of a property right of such owner for which damages may be awarded.

*Merritt*, 163 Ohio St. at 97, paragraph three of syllabus.  Following *Merritt*, Ohio courts have consistently held that road development or repair, conducted within a public right-of-way, and which alters the flow of traffic, does not trigger a property right.  *See, e.g.*, *Richley v. Jones*, 38 Ohio St. 2d 64, paragraphs one and two of syllabus (Ohio 1974); *New Way Family Laundry, Inc. v. City of Toledo*, 171 Ohio St. 242, paragraph three of syllabus (Ohio 1960).

For example, Ohio's high court has held that construction of a divider strip in the middle of a highway that results in the elimination of left-hand turns to and from the abutting property "does not constitute an actionable interference with the abutting property owner's right of ingress or egress," even if the construction burdens the property owner by requiring "circuity of travel." *New Way Family Laundry*, 172 Ohio St. at 242, paragraph three of syllabus.  Later, the Supreme Court of Ohio doubled down on this approach and held that a median strip constructed on land appropriated for highway purposes was not a compensable loss of property because it merely "cause[d] inconvenience, but not loss of access" to the land.  *Richley*, 38 Ohio St. 2d at 64, paragraph three of syllabus.  And an Ohio appellate court recently held that construction of a highway overpass that diverted traffic, resulting in "the loss of business," did not trigger an actionable property right because the business owner "ha[d] the same right of access to and from" the highway as before, "albeit from a less convenient route."  *Smith v. Dep't of Transp.*, No. 15AP-521, 2015-Ohio-5240, at ¶¶ 12-14 (10th Dist. Ct. App. 2015).  The Tenth District Court of Appeals explained its holding as follows:

> Applying the rule of law in *Merritt* to the facts alleged in appellant's complaint leads us to the conclusion that the loss of business experienced . . . due to the diversion of traffic . . . onto the newly established State Route 101 overpass is not a compensable injury under Ohio law.  ***Appellant does not have a right to the continuation or maintenance of the flow of traffic past [his business].***

*Id.* at ¶ 14 (emphasis added).

### c.  Wayne Watson Lacks a Protected Property Interest

As this discussion of the parties' leading cases and arguments demonstrates, the City is correct: Wayne Watson lacks a protected property interest under Ohio law, and, therefore, its procedural due-process claims fail at the first step of the analysis.  *See Warren*, 411 F.3d at 708 (requiring a protected property interest to raise a procedural due-process claim).

Wayne Watson correctly argues that, at a high level of generality, Ohio recognizes the right to use and enjoy one's property as "an original and fundamental right." *City of Norwood*, 110 Ohio St. 3d at 361-62. But *Norwood* was a strict takings case assessing Ohio's power of eminent domain. That case said nothing about the particular "stick" in the bundle of rights at issue here—namely, a private property owner's rights (if any) regarding a *publicly owned* right-of-way. Put simply, the City is not depriving Wayne Watson of its ability "to acquire, use, enjoy, [or] dispose of [its] property" through the use of eminent domain. *Id.* at 361. As such, *Norwood* does not control and, in fact, provides very little guidance.

Likewise, Wayne Watson correctly argues that, at a high level of generality, the operation of a business "is a property right," *Truax v. Corrigan*, 257 U.S. 312, 327 (1921), and "the right to do business" is "equally sacred" to "free speech," *Eastwood Mall*, 68 Ohio St. 3d at 223. Accordingly, the United States Supreme Court has held that state laws which provide a broad ban on injunctions in employer-employee disputes violate the Equal Protection Clause where they serve to cloak disgruntled employees in criminal immunity to the detriment of the business. *Truax*, 257 U.S. at 327-28 (holding that employer was entitled to injunction against unruly mob of picketing employees). And the Supreme Court of Ohio has held that because the right to operate a business includes "[t]he power to exclude," courts may issue injunctions prohibiting "picketing" and similar acts "on the property of a privately owned shopping center" without violating the right to free speech. *Eastwood Mall*, 68 Ohio St. 3d at 224 (quotation omitted). But this line of cases, which measures a business owner's right to conduct his affairs and exclude others from his property vis-à-vis the public's right to free speech and assembly, also says nothing about the precise right at issue in *this* case—i.e., whether Wayne Watson has any protected property interest in the development of the City's right-of-way.

13

Finally, Wayne Watson correctly argues that, at a high level of generality, "[t]he right to carry on [a] business is a property right constitutionally protected against unwarranted and arbitrary interference by legislative bodies." *Correll*, 141 Ohio St. at 540; *see also Olds*, 131 Ohio St. at 451. But here again, the cases cited are inapposite. Determining whether the State of Ohio may, under its police powers, control the hours that local businesses operate simply does not answer the unrelated question of whether private property owners have protected property interests in a public right-of-way. Here, the City has not directed Wayne Watson when to open or close the car wash for the day. Rather, the City simply wants to develop land that *it* owns in fee simple and which happens to abut Wayne Watson's business.

Instead, as the City argues, *Merritt* and its progeny provide the appropriate lens in which to view this dispute because it centers on a business owner who, in truth, claims a protected property right in the flow of traffic on public roads surrounding his property. Although this is not an eminent domain case like *Merritt* and subsequent decisions discussed above, the Sixth Circuit still looks to that line of cases when resolving procedural due-process claims involving roadwork that impacts the ongoing concern of a business. *See Warren*, 411 F.3d at 700, 708-09 (citing *Merritt* and follow-on cases in resolving procedural due-process claim of small business owner alleging protected property interest in the flow of traffic near his ice cream store); *Gibson & Perin Co. v. City of Cincinnati*, 480 F.2d 936, 939, 945 (6th Cir. 1973) (citing *Merritt* and holding that adjacent land owners "have no property right in the continuation or maintenance in the flow of traffic past their property" in due-process challenge). Looking to the most specific line of state-court decisions makes sense given that state law not only "create[s]" property interests, but also "define[s]" their "dimensions." *See Potts v. Gobles Pub. Sch. Dist.*, No. 16-1896, 2017 WL 318685, at *2 (6th Cir. Jan. 23, 2016) (quotation omitted).

Under *Merritt* and its progeny, Wayne Watson lacks a protected property interest in the City's use of the public right-of-way in front of the car wash.  Here, Wayne Watson's only protected property interest lies in the unfettered right of ingress and egress from Route 209. *See Warren*, 411 F.3d at 708-09 (citing *Merritt* and *Castrataro v. City of Lyndhurst*, No. 60901, 1992 WL 209578, at *2 (Ohio Ct. App. Aug. 27, 1992)).  Wayne Watson, however, has no protected property interest in the flow of traffic near the car wash on Route 209 or in the public right-of-way.  *See Gibson & Perin Co.*, 480 F.2d at 945 ("Under Ohio law plaintiffs, as owners or lessees of land abutting on the south side of Fourth Street, have no property right in the continuation or maintenance of the flow of traffic past their property . . . ." (citing *Merritt*)); *Smith*, 2015-Ohio-5240, at ¶ 14 ("Applying the rule of law in *Merritt* to the facts alleged in appellant's complaint leads us to the conclusion . . . . [that] Appellant does not have a right to the continuation or maintenance of the flow of traffic past [his business].").

The record makes clear that the City has no intention of blocking Wayne Watson's right of ingress and egress from Route 209.  Indeed, under the City's proposal, Wayne Watsons's two access roads from Route 209 to the car wash will remain untouched.  The proposed drive will merely connect one of those access roads to the Wendy's parking lot through a twelve-foot strip of concrete located entirely within the public right-of-way.  Thus, this is not a case like *Warren* (or *Castrataro v. City of Lyndhurst*), where a protected property right attached due to the government "block[ing] off . . .  part of the property's access to public roads."  411 F.3d at 709. Here, in contrast, the City is not proposing to block off *any* of Wayne Watson's access to Route 209.  Accordingly, the City is not, as Wayne Watson suggests, "molest[ing] a property enjoyment of the owner."  *See id.* (quotation omitted).  Under Ohio law, Wayne Watson simply cannot demonstrate a property interest sufficient to trigger procedural due process.

Similarly, while the record evidence suggests mixed results as to the flow of traffic *near* Wayne Watson's car wash[1]—those results are irrelevant to the procedural due-process inquiry. The City's proposal may well be designed "solely for [Wendy's]" benefit, as Wayne Watson argues, and may indeed "adversely affect [the car wash] located on the opposite side" of the drive—but negative intentions and impact do not suffice to *create* a protected property right. *See Gibson & Perin Co.*, 480 F.2d at 939, 945; *see also Merritt*, 163 Ohio St. at 104 ("It is now an established doctrine in most jurisdictions that such an owner has no right to the continuation or maintenance of the flow of traffic past his property. . . . The change in traffic flow in such a case is the result of the exercise of the police power . . . and is not the taking *or damaging* of a property right." (emphasis added)); *Smith*, 2015-Ohio-5240, at ¶ 14 ("Appellant does not have a right to the continuation or maintenance of the flow of traffic past [his business].").

On this final point, Wayne Watson argues that the Court should narrowly construe Ohio law governing the right (or lack thereof) to the maintenance of traffic flow by holding that *Merritt* and its progeny apply only when traffic will be diverted *away* from a business. It follows, Wayne Watson suggests, that landowners *do* possess a protected property right to the maintenance of the prior traffic flow if the proposed road or development will *increase* traffic near their businesses. Aside from turning economic theory on its head—in that businesses, and car washes in particular, presumably desire more traffic nearby (not less)—Wayne Watson's argument runs counter to Ohio law, which does not recognize any property right in the level of traffic on public roadways, be it large or small.

---

[1] Wayne Watson cites reports commissioned from various sources for the proposition that the proposed drive will create a traffic scrum in front of the car wash—requiring the company to demolish the building. The City, on the other hand, cites evidence that any resulting traffic confusion will stem from Wayne Watson's practice of stationing its employees within the public right-of-way to hand dry cars as they exit the conveyor belt from the car wash. In other words, the City argues that Wayne Watson is unilaterally creating the very harm the company warns against by stationing its employees on City land.

As the Third District Court of Appeals has explained:

> It is obvious from [*Merritt*] that the landowner has no property right in the flow of traffic on either [abutting] street. ***It might be large or small*** depending on the choice of the traveling public or the availability of alternate routes, ***but no property right in any degree of traffic belong[s] to the landowner***. . . . Each property owner at the time of his purchase of his property assume[s] certain risks, one of which [is] th[e] shift and change in the volume of traffic along the street abutting his premises . . . . For this[,] no compensation is granted.

*In re Appropriation for Highway Purposes of Land of Williams*, 15 Ohio App. 2d 139, 142-43 (Ohio Ct. App. 1968) (emphasis added).

Put differently: "buyer, beware!"  The State of Ohio and its local governments retain broad police powers to build, repair, and tear down roads as necessary.  *See id.* at 143.  So long as there is no taking of land or denial of existing ingress or egress to adjoining roads in connection with that construction, landowners may not assert a protected property right in any degree of traffic nearby.  *Id.*  Indeed, Ohio courts have held "that many intangible interferences with property" do not trigger protected property rights—including damages caused by "the increase in traffic from [an] expanded highway."  *See State ex rel. Reich v. Beachwood*, 158 Ohio App. 3d 588, 593 (Ohio Ct. App. 2004) (citing *In re Appropriation of Easements from Leas*, 5 Ohio App. 3d 120 (1981)).  But at bottom, and despite any "confusion" in the case law, landowners cannot assert a protected property interest "arising from a loss of market value from the increased noise or traffic of an enlarged highway" unless a taking, however slight, has occurred.  *See Hurst v. Starr*, 79 Ohio App. 3d 757, 763 (Ohio Ct. App. 1992) ("Properties located in the vicinity of the highway . . . may suffer a loss of market value to some extent. However, if there has been no taking of a person's property, there is no right to compensation or damages.  Under such circumstances, the loss suffered by the owner has been described as *damnum absque injuria* [loss without injury].").

### d.  Without a Protected Property Right, Wayne Watson's Procedural Due-Process Claims Fail

Because Wayne Watson lacks a protected property interest in the public right-of-way or the flow of traffic nearby, the company had no right—beyond that of the general public—to notice or an opportunity to be heard before the ordinances and plans at issue were approved. *See Nasierowski Bros.*, 949 F.2d at 896 ("Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard."); *Pickney Bros. Inc. v. Robinson*, 194 F.3d 1313, 1999 WL 801514, at *4 (6th Cir. 1999) (unpublished table decision) (same).  Here, Wayne Watson has not alleged that the City failed to properly notify the general public of the regularly scheduled City Council meetings at which the ordinances were passed. As such, Wayne Watson received all the process to which it was entitled under the United States Constitution.  *See Vajk v. City of Iron River, Mich.*, No. 2:10-CV-114, 2011 WL 101740, at *6 (W.D. Mich. Jan. 12, 2011) ("Although ordinances passed by a legislative body can affect the . . . property of individuals . . . to the point of ruin, the proper recourse for adversely affected individuals is the political process, not procedural due process enforced by federal courts." (quotation omitted)).[2]

---

[2] To be sure, governmental actors cannot undercut the Due Process Clause by publishing notice of a hearing on a matter of general concern but then turning around and singling out the property rights of an individual.  In *Nasierowski Brothers*, for example, the Sixth Circuit held that a landowner *was* entitled to individual notice where city council published notice of a "general plan" for rezoning but, then, at the request of one city councilor, "single[d] out and specifically target[ed]" the plaintiff's property "so as to convert [his] parcel to an O-1 zone for obvious personal reasons."  949 F.2d at 896.  As the court of appeals observed, "the Council's action clearly resulted in a differentiable impact on a specifiable individual, thus triggering a right to a hearing."  *Id.*; *see also Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 354 (6th Cir. 2010) (requiring individual notice and an opportunity to be heard where township's instructions "were not 'general [in] nature[,]' but rather targeted or singled-out Wedgewood's ability to construct a Wal-Mart on its property." (quotation omitted)).  Here, in contrast, Wayne Watson had *no* protected property interest at stake, such as a zoning permit or the right to develop its land.  Accordingly, there was nothing for City Council to "single out" or "specifically target."  *See Nasierowski Bros.*, 949 F.2d at 896.  It may have been "good government" for the City to provide individual notice to Wayne Watson before enacting the challenged ordinances, but "good government" concerns do not automatically rise to the level of a due process violation.  Without a protected property interest, Wayne Watson simply was not entitled to individual notice.  *See Hamilton*, 281 F.3d at 529.

2.  Wayne Watson's Reliance on the "Random and Unauthorized Act" Doctrine Lacks Merit.

Because Wayne Watson lacks a protected property interest, the company's procedural due-process claims fail as a matter of law in their entirety.  Count Three, which alleges a procedural due-process claim as a result of a "random and unauthorized act," fails for an independent reason: that doctrine has no place in this case.

Section 1983 plaintiffs can prevail on a procedural due-process claim by demonstrating the deprivation of property from either: "(1) an established state procedure that itself violates due process rights, or (2) a 'random and unauthorized act' causing a loss for which available state remedies would not adequately compensate the plaintiff."  *Warren*, 411 F.3d at 709 (quotation omitted).  Wayne Watson confusingly pleaded both types of procedural due-process violations from the same set of operative facts.  As explained below, however, the company's claims target only an established state procedure.

Ordinarily, "the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (collecting cases).  In some situations, however, a pre-deprivation hearing will be impossible or, at the very least, impracticable.  *Id.* at 128.  To account for these "special case[s]," including those that involve "random and unauthorized acts" by government officials, the Supreme Court developed "the *Parratt* rule," under which "post-deprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide."  *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).  Put differently, "due process does not require *pre*-deprivation notice-and-hearing process when the State is in no position to provide it because the deprivation was due to a defendant official's random or unauthorized act."  *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 614 (6th Cir. 2015).

19

Here, the "random and unauthorized act" doctrine does not apply because any deprivation of property (and the court finds there was none) would have had to result from an established state procedure that itself violates due-process rights. *See Wedgewood*, 610 F.3d at 355. As the Sixth Circuit has explained, "[a]n 'established state procedure' is defined as the mechanism that effects a deprivation or contributes to cause a deprivation." *Id.* (quotation omitted). Accordingly, "a government act constitutes 'an established state procedure' when officials with the authority to supply a hearing fail to provide one even though they should have foreseen the need to provide such procedural protections." *Id.* (citations omitted). As in *Wedgewood*, City Council is "the government entit[y] that should have foreseen, and could have provided, the exact procedural protection that [Wayne Watson] claims it was denied"—namely, notice and an opportunity to be heard before the ordinances were enacted. *Id.* But this simply is not a case where a pre-deprivation notice and hearing would have been "impossible" or impracticable for the City to provide. *See Warren*, 411 F.3d at 710. As such, Wayne Watson's claims "[are] not subject to the *Parratt* rule." *Id.*; *see also Mackey v. Dyke*, 29 F.3d 1086, 1093 (6th Cir. 1994).

### C. The City Is Entitled to Summary Judgment on Wayne Watson's Substantive Due-Process Claims.

Wayne Watson also alleges various substantive due-process violations stemming from the City's purportedly arbitrary and capricious conduct. (Doc. 16, ¶ 70(e) ("The [City's] acts have been arbitrary, capricious, willful, and without regard to the facts and circumstances of the case."); *id.* ¶ 73(c) ("[The] Ordinance[s] . . . are written in a manner that permits and encourages arbitrary, capricious, and discriminatory enforcement . . . ."); *id.* ¶ 79(d) ("The City's acts have been and will encourage arbitrary, capricious, willful, and discriminatory acts against [Wayne Watson].")).

The Sixth Circuit recognizes "that a substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest."  *Warren*, 811 F.3d at 707.  To prevail on a substantive due-process claim, a plaintiff must show "not only that the challenged state action was arbitrary and capricious, but also that the plaintiff has a constitutionally protected property . . . interest."  *Andreano v. City of Westlake*, 136 F. App'x 865, 871 (6th Cir. 2005); *Wedgewood*, 456 F. Supp. 2d at 931.  Without a threshold showing of a constitutionally protected property interest, "arbitrary and capricious conduct will not support a substantive due process claim."  *Andreano*, 136 F. App'x at 871; *McGuire v. City of Moraine, Ohio*, 178 F. Supp. 2d 882, 892-93 (S.D. Ohio 2001) (same).  Here, Wayne Watson's substantive due-process claims fail on both grounds, thereby entitling the City to summary judgment.

1.  Wayne Watson Lacks a Protected Property Interest Sufficient to Trigger Due Process.

The City is entitled to summary judgment on Wayne Watson's substantive due-process claims because, as with its procedural due-process claims, Wayne Watson lacks a protected property interest.  Without a constitutionally protected property interest (as created by state law), "alleged arbitrary and capricious conduct will not support a substantive due process claim."  *Wedgewood*, 456 F. Supp. 2d at 931 (citing *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992)).  As discussed in Section III.B.1., *supra*: (1) Wayne Watson does not have a property interest in the public right-of-way; (2) Wayne Watson's right of ingress and egress to Route 209 will not be impacted by the construction; and (3) Ohio law does not recognize a protected property interest in the maintenance or continuation of traffic flow past the car wash.  Wayne Watson, "therefore, possessed no property interest that could support a substantive due process claim."  *See Silver*, 966 F.2d at 1036.

Even viewing the evidence most favorably to Wayne Watson, "it is well-settled that [the company] cannot establish a violation of substantive or procedural due process, as a matter of law, *unless* [the company] possessed a property interest." *McGuire*, 178 F. Supp. 2d at 892. Mere "allegations of bias, partiality, and other improprieties," however, "do not establish the existence of such a property interest." *Id.* at 893. Consequently, there is no need to consider factual issues such as whether the City was biased, whether the City made an arbitrary and capricious decision, or whether the City acted out of a personal or political animus. *Id.*

Aside from re-hashing earlier arguments over possessing a right to "use and enjoyment" of its land, Wayne Watson cites a single case in support of its substantive due-process claims, *Simi Investment Co. v. Harris County, Texas*, 236 F.3d 240 (5th Cir. 2000). To be sure, *Simi Investment Co.* stated that "in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrary or capricious." *Id.* at 249 (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 601 (3d Cir. 1995)). But the Fifth Circuit also noted that "reliance on substantive due process must be taken with the 'utmost care,'" and, as here, held that the plaintiff "must first establish that it held a constitutionally protected property right" as established by state law. *Id.* at 249-50. Texas, like Ohio, recognizes "that an abutting property owner possesses an easement of access which is a property right," and that "diminishment in the value of property resulting from a loss of access [to public roads] constitutes damage." *Id.* at 250 (quotation omitted). Accordingly, the court held that a landowner who had been <u>denied access</u> to an abutting road for decades could assert a protected property right in his easement of access. *Id.* Wayne Watson's access to Route 209, in contrast, remains unfettered. Thus, *Simi Investment Co.* offers no help.

<u>2.  The City's Actions Were Not Arbitrary or Capricious.</u>

Even if a protected property interest were at stake, the City remains entitled to summary judgment on Wayne Watson's substantive due-process claims because the company has not raised a genuine dispute of material fact as to whether the City's actions were arbitrary and capricious.

To prevail on a substantive due-process claim, a plaintiff must show that the government "has been guilty of arbitrary and capricious conduct in the *strict* sense, meaning that there is no rational basis" for the decision. *Andreano*, 136 F. App'x at 872 (quotation omitted).  A land-use decision "will withstand substantive due process attack unless it is not supported on any rational basis or is willful and unreasoning action." *Id.* (quotation omitted).  Under this deferential standard of review, "it is extremely rare for a federal court to vitiate the action of a [government] agency as a violation of substantive due process"; district courts, therefore, may "dispose[]" of the "vast majority of such attacks . . . on summary judgment"—thereby ensuring "interference by federal courts with local government" stays at "a salutary minimum." *Id.* (quotation omitted).

Here, Wayne Watson fails to create a genuine dispute of material fact as to the City's decision-making.  The City has a legitimate interest in regulating traffic patterns and addressing congestion and safety. *Warren*, 411 F.3d at 711; *Brown v. City of Cleveland*, 66 Ohio St. 2d 93, 98 (Ohio 1981).  The City's ordinances and approval of the proposed drive rationally relate to those interests because the drive will allow restaurant patrons access to Route 209 via a traffic signal.  Permitting the City Engineer to establish guidelines for the construction of other access roads also relates rationally to the City's interest in regulating traffic patterns because it delegates responsibility to the person most knowledgeable on the issue to carry out its implementation. *See* Ohio Rev. Code § 737.021 (permitting delegation of authority to city engineer).

Wayne Watson may not like the City's decisions.  Indeed, Wayne Watson has put forth evidence suggesting that the City's decisions are not the safest or most reasoned approach to handling traffic on Route 209.  But federal substantive due-process guarantees do not enshrine a right to the best ideas, the safest ideas, the most popular ideas, or even the most efficient ideas. As the Sixth Circuit has explained, federal courts should "not interfere" with local land-use decisions "unless the locality's action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety, or the public welfare in its proper sense.'"  *See Braun*, 519 F.3d at 574 (quotation omitted).  Thus, when a municipality supports a challenged land-use decision by citing legitimate "public safety concerns such as . . . traffic [considerations]," that municipality remains entitled to summary judgment, even when viewing the facts "in a light most favorable to the plaintiffs."  *See id.*; *see also Andreano*, 136 F. App'x at 872 (holding that City's decision, despite "dilatory and deplorable conduct," survived substantive due-process challenge because it "was supported by a rational basis in law").

### D.  The City Is Entitled to Summary Judgment on Wayne Watson's Void-for-Vagueness Challenge.

Wayne Watson also challenges City Ordinance Nos. 50-14 and 38-15 as being unconstitutionally vague.  (Doc. 16, ¶ 73(d) ("Ordinance No. 50-14 permits the construction of the Access Road anywhere 'in the vicinity' of the Wendy's . . . and that such work will be 'overseen' by Defendant Sherry."); *id.* ¶ 73(e) ("Ordinance No. 38-15 generally permits 'access roads' throughout the City under some scheme developed by Defendant Sherry."); *id.* ¶ 73(h) ("The City of Cambridge's enforcement and threatened continued enforcement of these unconstitutionally vague acts have proximately caused and will continue to proximately cause the deprivation of Plaintiff's property interests.")).

Here again, Wayne Watson misconstrues the law.  The void-for-vagueness doctrine is not a freestanding tool to be wielded whenever a plaintiff disapproves a government action or policy. Instead, the doctrine simply requires "that laws *which regulate persons or entities* must give fair notice of conduct *that is forbidden or required*."  *FCC v. Fox TV Stations, Inc.*, 132 S.Ct. 2307, 2317 (2012) (emphasis added).  As this Court has observed, "[t]he due process clause of the Fourteenth Amendment mandates that statutes *governing conduct* must give adequate warning of what conduct is permitted and what conduct is forbidden.  *Gandee v. Glaser*, 785 F. Supp. 684, 693 (S.D. Ohio 1992) (emphasis added).  Thus, a party ordinarily has standing to challenge a statute or regulation as unconstitutionally vague only it its application to the conduct of which he or she stands accused.  *See United States v. Mazurie*, 419 U.S. 544, 550 (1975); *see also Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 n.6 (6th Cir. 1995) (holding that, outside the First-Amendment context, a party "has standing to raise a vagueness challenge only insofar as the statute is vague as applied to his or her specific conduct" (quotation omitted)); *Gandee*, 785 F. Supp. at 694 (same).

This case does not involve any First-Amendment claims.  Therefore, to have standing, Wayne Watson must demonstrate that the ordinances deprived the company of due process in light of the company's own conduct.  *Columbia Natural Res.*, 58 F.3d at 1109 n.6; *Gandee*, 785 F. Supp. at 694.  The challenged ordinances, of course, do not regulate Wayne Watson's conduct in any way.  They are not criminal ordinances with which the company must comply. And they are not regulatory ordinances that prohibit or compel certain conduct.  The ordinances simply express permissive use for the City's own public rights-of-way.  As a matter of law, Wayne Watson lacks standing to challenge these ordinances for their alleged vagueness. Accordingly, the City is entitled to summary judgment on any void-for-vagueness claims.

25

Wayne Watson's own cases prove the point, as they all involve criminal or regulatory prohibitions and regimes. *See Fox TV Stations*, 132 S.Ct. at 2311, 2317 (assessing constitutionality of FCC's "indecency enforcement regime"); *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 42-44 (1991) (O'Connor, J., dissenting) (assessing constitutionality of Alabama's punitive-damages scheme); *Grayned v. City of Rockford*, 408 U.S. 104, 107-08 (1972) (assessing constitutionality of an "antipicketing ordinance"); *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 555-56 (6th Cir. 1999) (assessing constitutionality of township's "Boat Bubbling Ordinance," which imposed criminal penalties for misuse of "bubbling devices" used to recirculate warm water in winter); *State v. Collier*, 62 Ohio St. 3d 267, 273-74 (Ohio 1991) (Brown, J., dissenting) (assessing constitutionality of Ohio's controlled-substances laws).

At bottom, and even viewing all evidence in the light most favorable to Wayne Watson's position, the company still lacks standing to assert a void-for-vagueness challenge. As such, the City remains entitled to summary judgment on this claim too.

### E.  The City Is Entitled to Summary Judgment on Wayne Watson's Non-Delegation Challenge.

Wayne Watson also challenges the ordinances and approval of the shared drive on the ground that City Council unconstitutionally delegated its authority over municipal roads to the City Engineer.  (Doc. 16, ¶ 79(c) ("The City of Cambridge has unlawfully abdicated City Council's responsibility to care, supervise, and control access roads within the City . . . to an unelected bureaucrat.")).  Although Wayne Watson's summary judgment briefing confusingly cites an Ohio statute as well as Ohio and federal case law, the Court construes this claim as one under the Due Process Clause of the Fourteenth Amendment given the wording of Count Four from the company's amended complaint.  *See Ctr. for Powell Crossing, LLC v. City of Powell*, 173 F. Supp. 3d 639, 675 n.12 (S.D. Ohio 2016).

Here again, Wayne Watson's argument misses the mark.  *First*, and as explained in detail in Section III.B.1., *supra*, Wayne Watson lacks a protected property interest sufficient to trigger protection under the Due Process Clause.  This "threshold issue" applies with equal force when a plaintiff raises a due-process challenge based on an alleged unconstitutional delegation of legislative authority as it does in challenges based on the lack of notice and an opportunity to be heard.  *See Biener v. Calio*, 361 F.3d 206, 216 (3d Cir. 2004); *Spinelli v. Rawson*, No. 16638, 1994 WL 463548, at *5-6 (Ohio Ct. App. 1994) (rejecting non-delegation challenge to city ordinance because plaintiffs "were not denied a right of access to their property, nor were they denied a right available to the public at large").  Without a protected property interest, Wayne Watson's non-delegation challenge fails as a matter of law.

*Second*, Wayne Watson has not pointed to any case that holds it is a violation of federal due process for a *state* legislature or municipality to delegate its legislative authority to an administrative agency.  This is not surprising given that "there is no independent federal constitutional doctrine of excessive delegation of state legislative power."  *United Beverage Co., Inc. v. Ind. Alcoholic Beverage Comm'n*, 760 F.2d 155, 157, 159 (7th Cir. 1985) (Posner, J.).  Put differently, the Constitution does not "place[] any general restraints on the delegation of state power to state administrators or generally require[] state power to be delegated according to well defined standards."  *See Geo-Tech Reclamation Servs., Inc. v. Hamrick*, 886 F.2d 662, 666 n.2 (4th Cir. 1989).  Municipalities, of course, remain free from strict separation-of-powers concerns too, as municipalities are merely creatures of state government.  *See Falls v. Town of Dyer, Ind.*, 875 F.2d 146, 147-48 (7th Cir. 1989) (noting that municipalities are not bound by federal separation-of-powers restrictions and that "many cities elect to fuse legislative and executive powers in the 'city manager' style of government").

Wayne Watson cites only *Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), in support of its non-delegation argument.[3]  The non-delegation doctrine articulated in *Schechter Poultry*, however, "is not based on the idea of due process of law . . . , but on the constitutional separation of powers" contained the first three Articles of our federal charter.  *United Beverage Co.*, 760 F.2d at 157 (discussing tri-partite government mandated by Articles I-III of the United States Constitution).  States, in contrast, are not governed by Articles I-III of the Constitution; instead, they may structure their own governments and political subdivisions as they deem fit. *Id.* at 157-58.  Although most states, including Ohio, now mirror the federal government in their basic structure, "the due process clause . . .  has not been interpreted to *compel* the states to imitate the structure of the federal government."  *Id.* at 158 (emphasis added).  Many cities, moreover, freely experiment with their own structure of government.  *Falls*, 875 F.2d at 147-48. In other words, despite Wayne Watson's argument, "[t]here is not" a "general federal constitutional doctrine limiting a *state* legislature's [or a city council's] delegation of legislative authority to an administrative agency."  *United Beverage Co.*, 760 F.2d at 157.

Therefore, even viewing the facts in the light most favorable to Wayne Watson, the company's non-delegation argument under the Due Process Clause is a non-starter, and the City remains entitled to summary judgment on this claim as well.

---

[3] Wayne Watson also cites *State ex rel. Selected Properties, Inc. v. Gottfried*, 163 Ohio St. 469, 473 (Ohio 1955), in support of its non-delegation argument.  In *Gottfried*, the Supreme Court of Ohio held that "any municipal ordinance which vests an arbitrary discretion in public administrative officials with reference to the rights, property, or business of individuals, without prescribing a uniform rule of action . . .  is unconstitutional, void, and beyond the powers of a municipality."  *Id.* (quotation omitted) (invalidating zoning ordinance).  *Gottfried*, however, was based on *Ohio's* "settled prohibition against the delegation of legislative power"—not federal due-process guarantees.  *Id.* at 471 (citing *Cincinnati, Wilmington & Zanesville R.R. Co. v. Comm'rs of Clinton Cnty.*, 1 Ohio St. 77, 88 (Ohio 1852)). Accordingly, *Gottfried* sheds no light on Wayne Watson's *federal* due-process challenge.  *See Mut. Ins. Co. of Am. v. Royal Appliance Mfg. Co.*, 112 F. App'x 386, 390 (6th Cir. 2004) (noting that "the Michigan Supreme Court has the final say" over "whether the statute amounts to an unconstitutional delegation of legislative authority under the Michigan Constitution"); (*see also* Pls.' Mot. for Summ J., Doc. 25, PageID 383 ("The 'standardless' delegation of City Council's authority over the Access Road violates *the due process guarantees of the United States Constitution*." (emphasis added))).

**F.  The Court Declines to Exercise Supplemental Jurisdiction over Wayne Watson's Challenges Under State and Municipal Law.**

Finally, Wayne Watson challenges the ordinances on the ground that they violate state and municipal law.  (Doc. 16, ¶ 92 ("The Access Road Ordinances conflict with Ohio Revised Code, Section 5535.02, because they authorize [the City] to construct, or have Wendy's construct, a limited access road that permits and encourages, rather than eliminates, the cross traffic of vehicles."); *id.* at ¶ 93 ("The Access Road Ordinances conflict with Ohio Revised Code, Section 5535.04 because they authorize construction of service roads without any determination that such road is necessary and in the public interest."); *id.* at ¶ 94 ("Moreover, the Access Road Ordinances conflict with, and violate, Cambridge City Code, Section 158.19, because they authorize [the City] to construct, or have Wendy's construct, a limited access road that permits and encourages, rather than prevents, the cross movement of internal traffic within 100 feet of an approach entrance of a high volume traffic generator use.").

Because the Court is granting summary judgment to the City on all of Wayne Watson's federal claims, the Court declines to exercise its supplemental jurisdiction over Wayne Watson's supplemental state-law claim under 28 U.S.C. § 1367(c)(3).  That jurisdictional provision states that "district courts may decline to exercise supplemental jurisdiction over a [state-law claim] if the district court has dismissed all claims over which it has original jurisdiction."  *Id.*  The Sixth Circuit routinely emphasizes this provision in holding "that 'a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.'" *Rouster v. Cnty. of Saginaw*, 759 F.3d 437, 454 (6th Cir. 2014) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

The justification for declining to exercise supplemental jurisdiction over stand-alone state-law claims rests on principles of federalism and comity.  *See Rouster*, 749 F.3d at 454. Put differently, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable [state] law."  *Id.*; *see also Moon*, 465 F.3d at 728 (collecting cases).  The Court, therefore, dismisses Count Six of the amended complaint and remands the matter to the Guernsey County Court of Common Pleas rather than "needlessly deciding state law issues." *Moon*, 465 F.3d at 728 (quotation omitted) (reversing district court's exercise of supplemental jurisdiction).

<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** the City's motion for summary judgment (Doc. 26) on every claim but Count Six; **DISMISSES and REMANDS** Count Six to the Guernsey County Court of Common Pleas for further proceedings consistent with this Opinion and Order; and **DENIES** Wayne Watson's motion for summary judgment (Doc. 25) in its entirety.

**IT IS SO ORDERED.**

<u>      /s/ Algenon L. Marbley      </u>
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 21, 2017**